1  BENJAMIN B. WAGNER
   United States Attorney
2  KEVIN C. KHASIGIAN
   Assistant U. S. Attorney
3  501 I Street, Suite 10-100
   Sacramento, CA  95814
4  Telephone:  (916) 554-2700

5  Attorneys for the United States

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,

12          Plaintiff,                    **VERIFIED COMPLAINT FOR**
                                          **FORFEITURE *IN REM***
13      v.

14
    APPROXIMATELY $97,972.70 IN U.S.
15  CURRENCY SEIZED FROM SAFE
    CREDIT UNION BUSINESS
16  CHECKING ACCOUNT NUMBER
    499150, HELD IN THE NAME OF
17  INDOOR SUN AND GARDEN,

18          Defendant.

19

20      The United States of America, by and through its undersigned attorney, brings

21  this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the

22  Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions:

23                          **NATURE OF ACTION**

24      1.      This is a civil action *in rem* brought by the United States for forfeiture of

25  $97,972.70 in U.S. Currency seized from Safe Credit Union business checking account

26  number 499150, held in the name of Indoor Sun and Garden, involved in violations of

27  federal currency reporting laws.

28

**JURISDICTION AND VENUE**

2.    This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

3.    This district is a proper venue pursuant to 28 U.S.C. § 1355 because the acts giving rise to this in rem forfeiture action occurred in this district, and pursuant to 28 U.S.C. § 1395(a) because some of the defendant funds are located in this district.

**CURRENCY TRANSACTION REPORTING REQUIREMENTS**

4.    Pursuant to 31 U.S.C. § 5313, and regulations there under, including 31 C.F.R. §§ 1010.300 and 1020.310 (formerly 31 C.F.R. §§ 103.22, 103.27 and 103.28), domestic financial institutions are required to prepare and submit Currency Transaction Reports (CTRs) to report cash transactions involving over $10,000 in currency, every time they occur at the bank, whether in one transaction or aggregated. It is the financial institution that is required to prepare and submit the CTR.  In order to complete the CTR form, the financial institution is required to verify and record the name and address of the person conducting the transaction, and the identity, account number, and the Social Security Number or taxpayer identification number, if any, of any person for whom a transaction is to affect.  This verification must be made with an identity document, such as a driver's license or passport.  These CTR rules apply to the deposit, withdrawal, exchange of currency, or other payment or transfer, by, through, or to such financial intuitions, which involves a transaction in currency of more than $10,000.

5.    It is a felony under 31 U.S.C. § 5324(a)(1) to cause or attempt to cause a financial institution to fail to file a CTR.  This provision encompasses multiple transactions occurring at the same financial institution, or different branches of the same financial institution, on the same or consecutive business days, by or on behalf of any person.  In the case of multiple transactions in one day which aggregate above the

Verified Complaint for Forfeiture *In Rem*

$10,000 CTR threshold, the multiple transactions are treated as one transaction under 31 C.F.R. § 1010.313(b) (formerly 31 C.F.R. § 103.22(c)(2)), thereby triggering the bank's obligation to file a CTR.

6.      It is a felony under 31 U.S.C. § 5324(a)(3) to structure or assist in structuring, or attempt to structure or assist in structuring, any currency transaction with one or more domestic financial institutions in an amount below the $10,000.01 currency transaction reporting (CTR) threshold.  "Structuring" includes but is not limited to:

> the breaking down a single sum of currency exceeding $10,000 into smaller sums, including sums at or below $10,000, or the conduct of a transaction, or series of currency transactions, including transactions at or below $10,000.  The transaction or transactions need not exceed the $10,000 reporting threshold at any single financial institution on any single day in order to constitute structuring within the meaning of this definition.

31 C.F.R. § 1010.100(xx) (formerly 31 C.F.R. § 103.11(gg)

## GENERAL ALLEGATIONS

7.      The defendant in this action is Approximately $97,972.70 in U.S. Currency seized from Safe Credit Union business checking account number 499150, held in name of Indoor Sun and Garden (the "defendant funds").  The defendant funds were seized from Safe Credit Union on or about August 7, 2012, at 3720 Madison Avenue, North Highlands, California, and are in the custody of the Internal Revenue Service, Eastern District of California.

8.      Account number 499150 was opened on December 30, 2011 in the name of Indoor Sun and Garden, a nursery supply business located at 3039 West Capitol Avenue in West Sacramento.  Kevin Vu, the owner of Indoor Sun and Garden, is the only authorized signer for the account.

9.      According to Indoor Sun and Garden's business license, filed with the City of West Sacramento on April 12, 2010, the business is wholly owned by Kevin Vu and grosses $40,000 per year.

10.      Indoor Sun and Garden's website, www.indoorsunhydro.com, provides

3

directions and contact information for the retail store; allows users to interface with the company and purchase products using online pay systems; and profiles its products by plant type, growth-stage and horticulture components, such as "cloning", "grow accessories", "grow lights", and "hydroponics".

11.     A financial investigation into Kevin Vu's banking activities revealed that he, or someone acting on his behalf, engaged in complex currency transactions in order to evade certain financial record keeping requirements in violation of currency reporting statutes.  Specifically, from January 30, 2012 to June 28, 2012, there were approximately fifty-four deposits totaling $427,860 in currency, all of which were in amounts under the CTR threshold of $10,000.01.[1]

12.     Below is a summary of cash deposits into Safe Credit Union business checking account number 499150 from January 30, 2012 to June 28, 2012:

| Bank | Account # | Date | Day | Deposits | Daily Subtotal |
|------|-----------|------|-----|----------|----------------|
| Safe CU | 499150 | 01/30/12 | Mon | $7,000.00 | |
| | | | | | |
| Safe CU | 499150 | 02/02/12 | Thu | $8,000.00 | |
| | | | | | |
| Safe CU | 499150 | 02/07/12 | Tue | $5,000.00 | |
| Safe CU | 499150 | 02/08/12 | Wed | $6,000.00 | |
| | | | | | |
| Safe CU | 499150 | 02/15/12 | Wed | $9,000.00 | |
| | | | | | |
| Safe CU | 499150 | 02/17/12 | Fri | $8,000.00 | |
| | | | | | |
| Safe CU | 499150 | 02/27/12 | Mon | $9,000.00 | |
| | | | | | |
| Safe CU | 499150 | 03/02/12 | Fri | $8,000.00 | |
| | | | | | |
| Safe CU | 499150 | 03/05/12 | Mon | $9,000.00 | |
| | | | | | |
| Safe CU | 499150 | 03/07/12 | Wed | $6,000.00 | |
| Safe CU | 499150 | 03/08/12 | Thu | $9,000.00 | |
| Safe CU | 499150 | 03/09/12 | Fri | $9,500.00 | |

[1]  From January 1, 2012 to June 30, 2012, approximately $675,766 was deposited into Safe Credit Union business checking account number 499150; of this amount, $546,808 represented cash deposits.  Each deposit was made at the Safe Credit Union branch located in West Sacramento, California.

4

| | | | | | |
|---|---|---|---|---|---|
| Safe CU | 499150 | 03/16/12 | Fri | $7,000.00 | |
| Safe CU | 499150 | 03/26/12 | Mon | $9,000.00 | |
| Safe CU | 499150 | 03/31/12 | Sat | $9,000.00 | |
| Safe CU | 499150 | 04/03/12 | Tue | $9,110.00 | |
| Safe CU | 499150 | 04/09/12 | Mon | $9,000.00 | |
| Safe CU | 499150 | 04/10/12 | Tue | $9,000.00 | |
| Safe CU | 499150 | 04/13/12 | Fri | $8,000.00 | |
| Safe CU | 499150 | 04/17/12 | Tue | $9,500.00 | |
| Safe CU | 499150 | 04/23/12 | Mon | $10,000.00 | |
| Safe CU | 499150 | 04/25/12 | Wed | $10,000.00 | |
| Safe CU | 499150 | 04/27/12 | Fri | $10,000.00 | |
| Safe CU | 499150 | 04/30/12 | Mon | $10,000.00 | |
| Safe CU | 499150 | 05/02/12 | Wed | $10,000.00 | |
| Safe CU | 499150 | 05/04/12 | Fri | $10,000.00 | |
| Safe CU | 499150 | 05/05/12 | Sat | $10,000.00 | |
| Safe CU | 499150 | 05/07/12 | Mon | $10,000.00 | |
| Safe CU | 499150 | 05/11/12 | Fri | $8,000.00 | |
| Safe CU | 499150 | 05/14/12 | Mon | $8,000.00 | |
| Safe CU | 499150 | 05/15/12 | Tue | $8,000.00 | |
| Safe CU | 499150 | 05/16/12 | Wed | $5,000.00 | |
| Safe CU | 499150 | 05/21/12 | Mon | $8,000.00 | |
| Safe CU | 499150 | 05/22/12 | Tue | $7,000.00 | |
| Safe CU | 499150 | 05/23/12 | Wed | $6,000.00 | |
| Safe CU | 499150 | 05/23/12 | Wed | $7,000.00 | |
| Safe CU | 499150 | 05/24/12 | Thu | $8,000.00 | |
| Safe CU | 499150 | 05/25/12 | Fri | $6,000.00 | |

Verified Complaint for Forfeiture *In Rem*

| | | | | | |
|---|---|---|---|---|---|
| Safe CU | 499150 | 05/26/12 | Sat | $8,000.00 | |
| | | | | | |
| Safe CU | 499150 | 05/30/12 | Wed | $5,500.00 | |
| Safe CU | 499150 | 05/31/12 | Thu | $8,000.00 | |
| Safe CU | 499150 | 06/01/12 | Fri | $5,000.00 | |
| | | | | | |
| Safe CU | 499150 | 06/04/12 | Mon | $8,000.00 | |
| Safe CU | 499150 | 06/05/12 | Tue | $8,800.00 | |
| Safe CU | 499150 | 06/06/12 | Wed | $9,200.00 | |
| Safe CU | 499150 | 06/07/12 | Thu | $9,800.00 | |
| Safe CU | 499150 | 06/08/12 | Fri | $7,500.00 | |
| Safe CU | 499150 | 06/08/12 | Fri | $1,000.00 | |
| | | | | | |
| Safe CU | 499150 | 06/13/12 | Wed | $6,050.00 | |
| Safe CU | 499150 | 06/14/12 | Thu | $9,000.00 | |
| | | | | | |
| Safe CU | 499150 | 06/18/12 | Mon | $7,900.00 | |
| Safe CU | 499150 | 06/19/12 | Tue | $6,000.00 | |
| | | | | | |
| Safe CU | 499150 | 06/26/12 | Tue | $8,000.00 | |
| Safe CU | 499150 | 06/28/12 | Thu | $6,000.00 | |
| | | | | | |
| | | | Total | $427,860.00 | |
| | | | | | |

13.     Separate deposits of $6,000 and $7,000 were made hours apart on Wednesday, May 23, 2012.  Safe Credit Union filed a CTR for the two deposits based on the cumulative total of $13,000.

///

///

///

///

///

///

///

///

///

6

Verified Complaint for Forfeiture *In Rem*

a.      The first cash deposit, totaling $6,000, was made at approximately 9:56 a.m. at the Safe Credit Union branch located in West Sacramento, California. Bank tellers positively identified Kevin Vu as the transactor.



b.      The second cash deposit, totaling $7,000, was made at approximately 3:14 p.m. at the Safe Credit Union branch located in West Sacramento, California.  Bank tellers positively identified Kevin Vu as the transactor.



14.     On June 11, 2012, it was noted by bank personnel that Kevin Vu brings in large cash deposits on a daily basis that smell of marijuana.  When interviewed by law enforcement on August 8, 2012, Kevin Vu denied being involved with the cultivation and/or distribution of marijuana.

15.     In addition, the financial investigation has revealed that Kevin Vu, or someone acting on his behalf, engaged in similar complex currency transactions in violation of currency reporting statutes while banking at JP Morgan Chase in 2011. JP Morgan Chase terminated its banking relationship with Kevin Vu in late 2011.

16.     For the complete details of the investigation relating to the defendant funds, see the Affidavit In Support of Seizure Warrant of Heidi Gutierrez with the United States Treasury Department, Internal Revenue Service, Criminal Investigation Division, dated August 7, 2012, attached hereto and incorporated herein as Attachment 1.


**FIRST CLAIM FOR RELIEF**
**(18 U.S.C. §§ 981(a)(1)(A), 984, and 31 U.S.C. § 5317(c)(2)**


17.     Paragraphs one to sixteen above are incorporated by reference as though fully set forth herein.

18.     Between January 30, 2012 and June 28, 2012, in the Eastern District of California, Kevin Vu, or someone acting on his behalf, structured transactions by conducting currency deposits with the intent to cause or attempt to cause a domestic financial institution to fail to file a CTR in violation of 31 U.S.C. § 5324(a)(1); therefore, the defendant funds are proceeds of, and/or property involved in, and/or facilitating property and therefore subject to forfeiture to the United States pursuant to 18 U.S.C. § 984 and 31 U.S.C. § 5317(c), incorporating the procedures governing civil forfeiture actions pursuant to 18 U.S.C. § 981.

Verified Complaint for Forfeiture *In Rem*

## SECOND CLAIM FOR RELIEF
### (18 U.S.C. §§ 981(a)(1)(A), 984, and 31 U.S.C. § 5317(c)(2))

19.    Paragraphs one to sixteen above are incorporated by reference as though fully set forth herein.

20.    Between January 30, 2012 and June 28, 2012, in the Eastern District of California, Kevin Vu, or someone acting on his behalf, structured currency deposit transactions by breaking them into amounts at or below $10,000 to avoid the CTR requirement in violation of 31 U.S.C. § 5324(a)(3).  In a six-month period, between January 30, 2012 and June 28, 2012, Kevin Vu, or someone acting on his behalf, conducted approximately fifty-four structured deposits of at least $427,860 in cash into Safe Credit Union business checking account number 499150.

21.    The defendant funds are proceeds of, and/or property involved in, and/or facilitating property of a violation of 31 U.S.C. § 5324(a)(3), and are therefore subject to forfeiture to the United States pursuant to 18 U.S.C. § 984 and 31 U.S.C. § 5317(c), incorporating the procedures governing civil forfeitures pursuant to 18 U.S.C. § 981.

22.    By reason of the foregoing and pursuant to the provisions of 18 U.S.C. §§ 981, 984, and 31 U.S.C. § 5317(c), the defendant funds are subject to forfeiture to the United States of America for violations of 31 U.S.C. §§ 5324(a)(1) and 5324(a)(3).  The defendant funds are property involved in or traceable to a violation of 31 U.S.C. §§ 5324(a)(1) and 5324(a)(3), or any conspiracy to commit such violation, and is therefore subject to forfeiture to the United States pursuant to 31 U.S.C. §  5317(c)(2).

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that:

1.  Process issue according to the procedures of this Court in causes of action in rem;

2.  Any person having an interest in said defendant funds be given notice to file a claim and to answer the complaint;

Verified Complaint for Forfeiture *In Rem*

1    3.  The Court enter a judgment of forfeiture of said defendant funds to the

2  United States; and

3    4.  The Court grant such other relief as may be proper.

4

Dated:   9/28/12                                    BENJAMIN B. WAGNER
5                                                    United States Attorney

6
                                            By:    /s/ Kevin C. Khasigian
7                                                  KEVIN C. KHASIGIAN
8                                                  Assistant U.S. Attorney

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Verified Complaint for Forfeiture *In Rem*

# VERIFICATION

I, Heidi Gutierrez, hereby verify and declare under penalty of perjury that I am a Task Force Officer with the Internal Revenue Service – Criminal Investigation, that I have read the foregoing Verified Complaint for Forfeiture In Rem and know the contents thereof, and that the matters contained in the Verified Complaint are true to the best of my knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent with the Internal Revenue Service.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.


Dated:   9/27/12

    /s/ Heidi Gutierrez
HEIDI GUTIERREZ
Task Force Officer
Internal Revenue Service,
Criminal Investigation

(Signature retained by attorney)

Verified Complaint for Forfeiture *In Rem*

# Attachment 1

**AFFIDAVIT OF HEIDI GUTIERREZ**
**IN SUPPORT OF SEIZURE WARRANT**

**I. INTRODUCTION**

1.      I, Heidi Gutierrez, Federal Task Force Officer for the United States Treasury Department,

Internal Revenue Service Criminal Investigation Division, being duly sworn, state:

2.      This affidavit is submitted in support of the Government's application for the issuance of

warrants to seize for civil and/or criminal forfeiture the following:

>       All funds maintained at Safe Credit Union business checking account number
>       499150, held in the name of **INDOOR SUN AND GARDEN**, in an amount up to
>       and including $427,860;

3.      This Affidavit is made in support of a warrant to seize funds pursuant to 18 U.S.C. § 981(b)

and 31 U.S.C. § 5317(c)(2).  As set forth below in this affidavit, I have probable cause to

believe that the funds identified above are subject to civil forfeiture pursuant to 31 U.S.C.

§ 5317(c)(2) (incorporating the procedures governing civil forfeitures in money laundering

cases pursuant to 18 U.S.C. § 981(a)(1)(A) and 18 U.S.C. § 984), based upon violations of

31 U.S.C. § 5324(a)(3) (structuring).

4.      Specifically, the facts set forth below establish probable cause to believe that from

January 30, 2012, and continuing at least to and through June 28, 2012, in the Eastern

District of California, **INDOOR SUN AND GARDEN and/or KEVIN VU**, or another person

acting for their benefit, structured transactions by breaking up currency deposits to Safe

Credit Union business checking account number 499150 held in the name of **INDOOR**

**SUN AND GARDEN**, to evade the currency transaction report ("CTR") requirement of 31

U.S.C. § 5313. Between January 30, 2012, and June 28, 2012, at least $427,860 in

1

currency was structured into Safe Credit Union business checking account number 499150. All funds in this account up to and including the amounts set forth in paragraph 2 above is therefore subject to seizure pursuant to 18 U.S.C. § 981(b) and  31 U.S.C. § 5317(c)(2), and forfeiture to the United States in accordance with 31 U.S.C. § 5317(c)(2).

5.      Unless stated otherwise, I have business knowledge of the matters set out in this affidavit. To the extent that any information in this affidavit is not within my business knowledge, it was made known to me through my own review of the documents discussed in this affidavit and through reliable law enforcement sources, including discussions with other law enforcement agents and task force officers assigned to the IRS Task Force.

## II. BACKGROUND AND EXPERIENCE OF AFFIANT

6.      I have been employed by the California the Franchise Tax Board for 18 years; for the last four years as a Special Agent and for nine years prior as an Auditor. I have a Bachelor's Degree in Business Management and a Master's Degree in Business Administration. I am a sworn peace officer under California Penal Code §830.3, and a deputized Federal Task Force Officer for the United States Treasury Department, Internal Revenue Service Criminal Investigation Division. I am currently assigned to the Financial Crimes Task Force based in Sacramento, California, where my duties include the investigation of criminal violations of the Internal Revenue Code, set forth in Title 26, criminal violations of anti-money laundering laws, set forth in various sections of Title 31, and other violations of law set forth in Title 18. As part of the Task Force I have been involved in

investigations of alleged criminal violations, which have included without limitation: Title 26 U.S.C. § 7201, income tax evasion; 26 U.S.C. § 7206(2), aiding or assisting in the preparation of false or fraudulent income tax returns; 18 U.S.C. § 286, conspiracy to defraud the government with respect to claims; 18 U.S.C. § 287, filing false claims with the U.S. government, 18 U.S.C. § 1341, mail fraud, 18 U.S.C. § 1343, wire fraud, 31 U.S.C. § 5324(a)(3), structuring cash transactions and 31 U.S.C. § 5324(a)(1), causing a bank to fail to file a currency transaction report.

7. I have attended training in various aspects of criminal investigation as well as attending classes and seminars dealing specifically with money laundering, asset seizure and forfeiture, various financial investigative techniques, and related financial investigations.

8. I have participated in the execution of federal and state search warrants involving the seizure of: contraband and records relating to the concealment of assets and proceeds; records including, but not limited to, telephone bills, business telephone books, photographs and letters that have identified co-conspirators and others involved in the criminal activity; records pertaining to the purchase of real and business property; bank records; escrow records; credit card records; tax returns; business books and records; and computer hardware and software.

9. Based on my training and experience I am familiar with the methods and practices used by individuals and organizations involved in financial crimes and illicit activities that generate large amounts of income. These methods include, among others, making cash purchases, conducting financial transactions with cash in amounts less than $10,000,

3

using aliases and nominees, using businesses as "fronts" in an attempt to legitimize and conceal their activities, and using "off-shore" banking in an attempt to break a financial paper trail.

10.    I also have experience in debriefing defendants, participant witnesses, informants, and other persons who have had business experience and knowledge of the amassing, spending, converting, transporting, distributing and concealing of proceeds from illegal activities.

11.    I know from my training, experience, and speaking with experienced Internal Revenue Service Agents that "structuring" of cash transactions is a frequent practice among those who commit fraud, drug traffickers, money launderers, tax evaders and other criminals who seek to avoid law enforcement scrutiny of large cash transactions. As described below, in the course of this investigation, I have uncovered numerous instances involving the structuring of cash deposits.

## IV. APPLICABLE CRIMINAL LAWS

12.    Currency Transaction Reports and Structuring Offenses: Pursuant to the Bank Secrecy Act (31 U.S.C. §§ 5313 et seq.), and related regulations, including without limitation 31 C.F.R. Part § 1010.310 through 1010.314 and 1010.306, domestic financial institutions are generally required to prepare and submit Currency Transaction Reports ("CTRs") to report large cash transactions, consisting of transactions involving over $10,000 in currency, every time they occur at the bank. There are some exceptions for qualifying businesses and government agencies, not applicable here.  In order to complete the CTR

4

form, the financial institution is required to verify and record the name and address of the person presenting a transaction, and the identity, account number, and the Social Security number or taxpayer identification number, if any, of any person for whom a transaction is to be effected. This verification must be made with an identity document, such as a driver's license or passport. These CTR rules apply to the deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial intuitions, which involves a transaction in currency of more than $10,000.

13.     It is a felony under 31 U.S.C. § 5324(a)(3) to structure or assist in structuring, or attempt to structure or assist in structuring, any currency transaction with one or more domestic financial institutions in an amount below the $10,000.01 currency transaction reporting (CTR) threshold.  "Structuring" includes but is not limited to:

> breaking down a single sum of currency exceeding $10,000 into smaller sums, including sums at or below $10,000, or the conduct of a transaction, or series of currency transactions, including transactions at or below $10,000. The transaction or transactions need not exceed the $10,000 reporting threshold at any single financial institution on any single day in order to constitute structuring within the meaning of this definition. 31 C.F.R. Part § 1010.100(xx).

14.     31 U.S.C. § 5324 (a)(3) requires proof that the defendant acted with the requisite intent to evade the CTR reporting requirement discussed above, but does not require proof that the defendant acted with knowledge that his conduct was unlawful. United States v. Pang, 362 F.3d 1187 (9th Cir. 2004).

5

**V. THE INVESTIGATION**

15.   Because this affidavit is made solely to seize funds for asset forfeiture, I have not

included every fact known to me about this investigation.

16.   According to 31 U.S.C. § 5324(a)(3), the transaction must take place with a "domestic

financial institution." Title 31 U.S.C. § 5312(a)(2) defines the various types of financial

institutions. One of the definitions given under 31 U.S.C. § 5312(a)(2)(A) defines a

financial institution as "an insured bank (as defined in § 3(h) of the Federal Deposit

Insurance Act (12 U.S.C. § 1813(h))." According to the National Credit Union

Administration (NCUA) website, http://www.ncua.gov, Safe Credit Union is a domestic

credit union, the deposits of which are insured by the National Credit Union

Administration. I therefore have probable cause to believe that the Safe Credit Union

qualifies as a "domestic financial institution."

17.   I reviewed Safe Credit Union bank records and noted the following information:

a.      Account number 499150 is a business checking account opened on December

30, 2011, in the name of Indoor Sun and Garden, located at 3039 West Capitol

Avenue, West Sacramento, California. Indoor Sun and Garden is a nursery supply

business and was established on May 20, 2010.

b.      Kevin Vu is listed as the owner and the only authorized signer for account

number 499150.

18.   I reviewed the business license for Indoor Sun and Garden was filed with the City of

West Sacramento on April 12, 2010, and noted the following information:

6

a.    Kevin Vu is the owner of Indoor Sun and Garden, located at 3039 West Capitol Avenue, West Sacramento, California.

b.    Indoor Sun and Garden is a sole proprietor retail business and the estimated gross receipts are $40,000 per year.

19.   On August 3, 2012, I visited Indoor Sun and Garden located at 3039 West Capitol Avenue, West Sacramento, California. The location was open for business and in a thirty minute period I observed two customers enter and leave the business with small purchases.

20.   On August 3, 2012, an internet search for Indoor Sun and Garden indicated the business website is www.indoorsunhydro.com. The website includes directions to the store, allows users to e-mail the business, and to create an account and purchase product online.

21.   I reviewed bank statements and other bank information relating to Safe Credit Union business checking account number 499150 maintained by Indoor Sun and Garden and noted the following information:

a.    For the time period between January 1, 2012 and June 30, 2012, deposits totaled $675,766, and of this amount, $546,808 were cash deposits.

b.    For the time period between January 30, 2012, and June 28, 2012, transactions reflect approximately 54 deposits totaling $427,860 in currency, all of which were in amounts under the CTR threshold of $10,000.01. These deposits were made at the Safe Credit Union branch located in West Sacramento, California.

c.  On June 11, 2012, bank personnel noted that Kevin Vu brings in large cash
deposits on a daily basis that contain the scent of marijuana.

d.  On May 7, 2012, bank personnel had a conversation with Kevin Vu regarding
depositing cash in a structured manner. On May 29, 2012, Kevin Vu made a
deposit of $12,000 in cash and a CTR was filed by Safe Credit Union for this
deposit.

22.  Below is a summary of currency deposits into Safe Credit Union business checking
account number 499150 for the time period between January 30, 2012, and June 28,
2012:

| Bank | Account # | Date | Day | Deposits | Daily Subtotal |
|------|-----------|------|-----|----------|----------------|
| Safe CU | 499150 | 01/30/12 | Mon | $7,000.00 | |
| | | | | | |
| Safe CU | 499150 | 02/02/12 | Thu | $8,000.00 | |
| | | | | | |
| Safe CU | 499150 | 02/07/12 | Tue | $5,000.00 | |
| Safe CU | 499150 | 02/08/12 | Wed | $6,000.00 | |
| | | | | | |
| Safe CU | 499150 | 02/15/12 | Wed | $9,000.00 | |
| | | | | | |
| Safe CU | 499150 | 02/17/12 | Fri | $8,000.00 | |
| | | | | | |
| Safe CU | 499150 | 02/27/12 | Mon | $9,000.00 | |
| | | | | | |
| Safe CU | 499150 | 03/02/12 | Fri | $8,000.00 | |
| | | | | | |
| Safe CU | 499150 | 03/05/12 | Mon | $9,000.00 | |
| | | | | | |
| Safe CU | 499150 | 03/07/12 | Wed | $6,000.00 | |
| Safe CU | 499150 | 03/08/12 | Thu | $9,000.00 | |
| Safe CU | 499150 | 03/09/12 | Fri | $9,500.00 | |
| | | | | | |
| Safe CU | 499150 | 03/16/12 | Fri | $7,000.00 | |

8

| Bank | Account # | Date | Day | Deposits | Daily Subtotal |
|------|-----------|------|-----|----------|----------------|
| Safe CU | 499150 | 03/26/12 | Mon | $9,000.00 | |
| | | | | | |
| Safe CU | 499150 | 03/31/12 | Sat | $9,000.00 | |
| | | | | | |
| Safe CU | 499150 | 04/03/12 | Tue | $9,110.00 | |
| | | | | | |
| Safe CU | 499150 | 04/09/12 | Mon | $9,000.00 | |
| Safe CU | 499150 | 04/10/12 | Tue | $9,000.00 | |
| | | | | | |
| Safe CU | 499150 | 04/13/12 | Fri | $8,000.00 | |
| | | | | | |
| Safe CU | 499150 | 04/17/12 | Tue | $9,500.00 | |
| | | | | | |
| Safe CU | 499150 | 04/23/12 | Mon | $10,000.00 | |
| | | | | | |
| Safe CU | 499150 | 04/25/12 | Wed | $10,000.00 | |
| | | | | | |
| Safe CU | 499150 | 04/27/12 | Fri | $10,000.00 | |
| | | | | | |
| Safe CU | 499150 | 04/30/12 | Mon | $10,000.00 | |
| | | | | | |
| Safe CU | 499150 | 05/02/12 | Wed | $10,000.00 | |
| | | | | | |
| Safe CU | 499150 | 05/04/12 | Fri | $10,000.00 | |
| Safe CU | 499150 | 05/05/12 | Sat | $10,000.00 | |
| | | | | | |
| Safe CU | 499150 | 05/07/12 | Mon | $10,000.00 | |
| | | | | | |
| Safe CU | 499150 | 05/11/12 | Fri | $8,000.00 | |
| | | | | | |
| Safe CU | 499150 | 05/14/12 | Mon | $8,000.00 | |
| Safe CU | 499150 | 05/15/12 | Tue | $8,000.00 | |
| Safe CU | 499150 | 05/16/12 | Wed | $5,000.00 | |
| | | | | | |
| Safe CU | 499150 | 05/21/12 | Mon | $8,000.00 | |
| Safe CU | 499150 | 05/22/12 | Tue | $7,000.00 | |
| | | | | | |
| | | | | | |
| | | | | | |

9

| Bank | Account # | Date | Day | Deposits | Daily Subtotal |
|------|-----------|------|-----|----------|----------------|
| Safe CU | 499150 | 05/23/12 | Wed | $6,000.00 | |
| Safe CU | 499150 | 05/23/12 | Wed | $7,000.00 | $13,000.00 [1] |
| | | | | | |
| Safe CU | 499150 | 05/24/12 | Thu | $8,000.00 | |
| Safe CU | 499150 | 05/25/12 | Fri | $6,000.00 | |
| Safe CU | 499150 | 05/26/12 | Sat | $8,000.00 | |
| | | | | | |
| Safe CU | 499150 | 05/30/12 | Wed | $5,500.00 | |
| Safe CU | 499150 | 05/31/12 | Thu | $8,000.00 | |
| Safe CU | 499150 | 06/01/12 | Fri | $5,000.00 | |
| | | | | | |
| Safe CU | 499150 | 06/04/12 | Mon | $8,000.00 | |
| Safe CU | 499150 | 06/05/12 | Tue | $8,800.00 | |
| Safe CU | 499150 | 06/06/12 | Wed | $9,200.00 | |
| Safe CU | 499150 | 06/07/12 | Thu | $9,800.00 | |
| Safe CU | 499150 | 06/08/12 | Fri | $7,500.00 | |
| Safe CU | 499150 | 06/08/12 | Fri | $1,000.00 | |
| | | | | | |
| Safe CU | 499150 | 06/13/12 | Wed | $6,050.00 | |
| Safe CU | 499150 | 06/14/12 | Thu | $9,000.00 | |
| | | | | | |
| Safe CU | 499150 | 06/18/12 | Mon | $7,900.00 | |
| Safe CU | 499150 | 06/19/12 | Tue | $6,000.00 | |
| | | | | | |
| Safe CU | 499150 | 06/26/12 | Tue | $8,000.00 | |
| Safe CU | 499150 | 06/28/12 | Thu | $6,000.00 | |
| | | | | | |
| | | | Total | $427,860.00 | |

23.    Consecutive day currency deposits were made at Safe Credit Union approximately

eleven (11) times in amounts just under the $10,000.01 reporting guideline, which if

aggregated would exceed $10,000.01, as detailed below:

---

[1] CTR filed

10

a.      A deposit of $5,000 was made on Tuesday, February 7, 2012, followed by a

deposit of $6,000 on Wednesday, February 8, 2012.

b.      A deposit of $6,000 was made on Wednesday, March 7, 2012, followed by a

deposit of $9,000 on Thursday, March 8, 2012.

c.      A deposit of $9,000 was made on Monday, April 9, 2012, followed by a deposit of

$9,000 on Tuesday, April 10, 2012.

d.      A deposit of $10,000 was made on Friday, May 4, 2012, followed by a deposit of

$10,000 on Saturday, May 5, 2012.

e.      A deposit of $8,000 was made on Monday, May 14, 2012, followed by a deposit

of $8,000 on Tuesday, May 15, 2012, followed by a deposit of $5,000 on

Wednesday, May 16, 2012.

f.      A deposit of $8,000 was made on Monday, May 21, 2012, followed by a deposit

of $7,000 on Tuesday, May 22, 2012.

g.      A deposit of $8,000 was made on Thursday, May 24, 2012, followed by a deposit

of $6,000 on Friday, May 25, 2012, followed by a deposit of $8,000 on Saturday,

May 26, 2012.

h.      A deposit of $5,500 was made on Wednesday, May 30, 2012, followed by a

deposit of $8,000 on Thursday, May 31, 2012, followed by a deposit of $5,000 on

Friday, June 1, 2012.

i.      A deposit of $8,000 was made on Monday, June 4, 2012, followed by a deposit of

$8,800 on Tuesday, June 5, 2012, followed by a deposit of $9,200 on

11

Wednesday, June 6, 2012, followed by a deposit of $9,800 on Thursday, June 7, 2012, followed by deposits of $7,500 and $1,000 on Friday, June 8, 2012.

j.  A deposit of $6,050 was made on Wednesday, June 13, 2012, followed by a deposit of $9,000 on Thursday, June 14, 2012.

k.  A deposit of $7,900 was made on Monday, June 18, 2012, followed by a deposit of $6,000 on Tuesday, June 19, 2012.

24.  Same day currency deposits were made at Safe Credit Union approximately one (1) time in amounts just under the $10,000.01 reporting guideline, and had these deposits been done in one transaction, if aggregated, would exceed $10,000.01, as detailed below:

a.  A deposit of $6,000 and a deposit of $7,000 were both made on Wednesday, May 23, 2012. A cumulative CTR for multiple transactions was filed by Safe Credit Union for these two deposits.

25.  In addition to the consecutive day and same day currency deposits noted above there were approximately 21 additional currency deposits made in amounts just below the CTR reporting requirement.  I believe that although these deposits were not consecutive day or same day deposits, based on training and experience, the other structured currency deposits, and the amounts just below the $10,000.01 reporting requirement these currency deposits were also made to avoid filing a CTR.

26.  Based on the foregoing, I believe there is probable cause to believe the transactor was aware of the CTR filing requirement and was purposefully depositing amounts less than $10,000.01 to structure cash deposits in violation of 31 U.S.C. § 5324(a)(3). I therefore

request authority to seize an amount up to and including $427,860 from Safe Credit

Union business checking account number 499150 held in the name of INDOOR SUN AND

GARDEN. This amount represents currency deposits made below the CTR threshold

between January 30, 2012, and June 28, 2012.

27.     Title 18 U.S.C. § 984 provides: "In any forfeiture action in rem in which the subject

property is cash, monetary instruments in bearer form, funds deposited in an account in

a financial institution (as defined in § 20 of this title), or precious metals - (A) it shall not

be necessary for the Government to identify the specific property involved in the

offense that is the basis for forfeiture; and (B) it shall not be a defense that the property

involved in such offense has been removed and replaced by such property." Section 984

(B), however, specifies that no action pursuant to this section to forfeit property not

traceable directly to the offense that is the basis for forfeiture may commence more

than one (1) year from the date of the offense. The cash deposits totaling $427,860

listed above were all deposited within the past year.

## VI. AFFIANT'S CONCLUSIONS

28.     Based on the investigation to date and my training and experience, I have probable

cause to believe that **INDOOR SUN AND GARDEN and/or KEVIN VU**, or another person

acting on their behalf, in the Eastern District of California, have committed violations of

31 U.S.C. § 5324. Based on such violations, I have probable cause to believe that the

following funds are subject to seizure and forfeiture:

> All funds maintained at Safe Credit Union business checking account number
> 499150, held in the name of **INDOOR SUN AND GARDEN**, in an amount up to
> and including $427,860.

## VII. SEALING REQUEST

29.     The United States requests that the Court order this seizure warrant and seizure warrant

affidavit be kept under seal until further order of the Court, with the exception that a

copy of the seizure warrant will be left at the scene of the seizure.  The affiant states that

a criminal investigation regarding INDOOR SUN AND GARDEN is continuing, and further

interviews, grand jury appearances, and search warrants are contemplated. Disclosure of

the contents of this affidavit would seriously impede the investigation by disclosing

details of the government's investigation and evidence gathered in connection therewith.

The targets and subjects of the investigation would be able to learn the present extent of

the government's knowledge. The affiant also believes that disclosure of this affidavit

would enable the targets and subjects of the investigation to identify those individuals

who are cooperating with the government, to the detriment of the investigation. The

affiant believes that this would lead to pressure on these and other potential witnesses

14

not to speak to the government agents and could seriously impede the investigation.

According, the affiant requests that the Court issue an order sealing this affidavit until

further order of this Court.

Heidi Gutierrez
Task Force Officer

Reviewed and approved as to form:

Kevin C. Khasigian
Assistant United States Attorney

Subscribed and sworn to before me
this _____ 7th _____ day of August    , 2012.

Hon. Edmund F. Brennan, United States Magistrate Judge

15